# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| **JOSEPH TERRE, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No: 2:15-cv-02456-STA-cgc |
| | ) | |
| **DORSEY HOPSON &** | ) | |
| **SHELBY COUNTY SCHOOLS,** | ) | |
| **UNIFIED SCHOOL DISTRICT,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
## DENYING PLAINTIFF'S REQUEST FOR SANCTIONS AS MOOT

Plaintiff Joseph Terre, Jr., filed this action against Dorsey Hopson, school superintendent, and the Shelby County Schools Unified School District ("SCS"), alleging violations of his rights under the Americans with Disabilities Act (as amended), 42 U.S.C. § 12101 et seq. ("ADA") and the Age Discrimination in Employment Act, 29 U.S.C. § 623.[1] (ECF Nos. 1, 13.) Defendants have filed a motion for summary judgment (ECF No. 38), Plaintiff has filed a response to the motion (ECF No. 43), and Defendants have filed a reply to the response. (ECF No 52.) For the reasons set forth below, Defendants' motion is **GRANTED**.

### Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

---

[1] Plaintiff has stipulated to the dismissal of his claim under the Tennessee Teacher Tenure Act, Tenn. Code Ann. § 49-5-501, *et seq.* (Pl's Resp. Defs' SOF, ¶¶ 25, 26, ECF No. 43-1.)

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] When deciding a motion for summary judgment, the court must review all the evidence and draw all reasonable inferences in favor of the non-movant.[3] In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence."[4] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[7] The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at

---

[2] Fed. R. Civ. P. 56(c).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id.* at 251–52.

trial."[8]

Statement of Facts

The following facts are undisputed for the purpose of deciding this motion unless otherwise noted:

Plaintiff has been a teacher since 1966. He began teaching with Memphis City Schools ("MCS") in 1984. He has a Master's Degree in School Administration and a Juris Doctorate. In 2001 and 2003-05, Plaintiff was hired by the State of Tennessee as an Exemplary Educator. In 2006, he returned to teaching. In 2008, he worked as a substitute teacher for SCS, and in 2009 he was a substitute teacher for MCS and SCS.[9]

From October 2010 until the end of spring 2011, Plaintiff coordinated the remedial reading program at Wooddale High School. He also coached soccer at Wooddale five days per week after school. In the fall of 2011, at Wooddale, Plaintiff volunteered to run the reading plus program, and he filled an interim position teaching physical science.[10]

In October 2012, Plaintiff was appointed as the economics teacher at Wooddale, and he took the Praxis Exam in economics. He became certified to teach economics in or about February 2013, in addition to already being certified in English and history.[11]

Plaintiff was a Career Level III teacher and was regarded as highly qualified in several other subjects at the high school level. Career Ladder III is the highest certification recognized by the State Department of Education and was given to Plaintiff after a twelve month evaluation in 1986. Plaintiff was a "Type 03 prof.," meaning that he was a

---

[8] *Celotex*, 477 U.S. at 322.

[9] (Defs' Resp. to Pl's SOF, ¶¶ 1-2, ECF No. 52-1.)

[10] (*Id.* at ¶¶ 3-4.)

[11] (*Id.* at ¶¶ 5-6.)

Professional Level teacher. Apprentice Level teachers teach for three to five years before obtaining a Professional Level license.[12]

Plaintiff was not evaluated at Wooddale from 2010 to 2013, but he was evaluated in 2001 and 2005. Plaintiff has never received an unsatisfactory evaluation, nor has he ever incurred formal discipline throughout his teaching career.[13]

Michael Kyle, principal of Wooddale, asked teacher, Kever Conyers, to coach soccer, but in reality Plaintiff was the coach. Conyers was the Chairman of the Social Studies Department in 2014 to 2015. He was familiar with Plaintiff's reputation as a teacher among Wooddale faculty and believed that Plaintiff's reputation was solid.[14]

Ryan Quinn was born on December 15, 1989, and he signed an employment contract with SCS on December 20, 2013. He had no Career Ladder status. He was certified to teach only history until October 10, 2014, at the earliest. He has a Bachelor's Degree. Before working at Wooddale, Quinn was a part-time substitute teacher in Alabama, while also working at a "chicken finger place." Conyers mentored Quinn while Quinn taught at Wooddale. In Quinn's third year of teaching for SCS, he was assigned a mentor while at Central High. Quinn held an Apprentice Level Teacher's License while he was at Wooddale.[15]

Plaintiff held a full-time economics teaching position at Wooddale on August 5, 2013, the beginning of the 2013-2014 school year. Plaintiff's position consisted of teaching five

---

[12] (*Id.* at ¶¶ 7-8.)

[13] (*Id.* at ¶¶ 9-10.)

[14] (*Id.* at ¶¶ 11-12.)

[15] (*Id.* at ¶¶ 12 - 16.)

economics classes and one sociology class per semester.[16]

On October 25, 2013, Plaintiff went on approved FMLA leave. Plaintiff asked for several extensions of leave, and each extension was allowed following certification from Plaintiff's health care provider.[17]

On April 15, 2014, Principal Kyle emailed Plaintiff that seven teachers would be excessed, and his full-time economics position would be one of the positions excessed. Kyle's email stated that "Quinn is taking the Economics Praxis in June and will hopefully pass it. If he doesn't, then I'll go back to square one." The excessing was purportedly due to budget cuts resulting from projected enrollments for the next year.[18]

SCS has written procedures for principals to follow when excessing teachers. Each principal of a school and HR receive an allocation of teaching positions based on the upcoming student enrollment projections. Principals are supposed to follow SCS's protocol when selecting teachers to be excessed. Principals "must ensure that they have certified teachers in their building" and "that they have the right teachers who can continue their

---

[16] (Pl's Resp. Defs' SOF, ¶¶ 1 - 2, ECF No. 43-1.) Economics is a required class for graduation in Tennessee. (*Id.* at ¶ 7.)

[17] (*Id.* at ¶¶ 3-4.) Plaintiff has expounded on this fact with the following dates: In November 2013, he wrote a letter to SCS, stating his diagnosis of spinal stenosis, the related pain, his need to use a wheelchair or walker, and the possibility that he would have surgery. Plaintiff also sent this letter to Kyle with a request to add the letter to his file. On January 23, 2014, OrthoMemphis faxed medical forms to SCS's Human Resources Department ("HR") and requested leave for Plaintiff until he could return to work on March 17, 2014, based on Plaintiff's spinal stenosis. SCS granted this request. On January 23, 2014, HR notified Kyle of the extension. On March 24, 2014, Plaintiff faxed HR an updated medical request for leave, with a return to work date of August 1, 2014. On March 26, 2014, HR notified Kyle that Plaintiff's leave of absence was extended to August 1, 2014. On July 30, 2014, Defendants granted Plaintiff a leave of absence between August 1, 2014, and August 21, 2014. On September 26, 2014, Defendants retroactively granted Plaintiff's request for a leave of absence to cover between August 1 2014, and October 3, 2014. (*Id.*)

[18] (*Id.* at ¶¶ 4, 6 - 7.) Plaintiff denies that this was the reason for his excessing.

program." There are exceptions, if, for example, a principal for a high school "may not be able to complete a master schedule to make sure all kids get the required credits for graduation," meaning that a school may be allocated ten teachers but, due to requirements of graduation, the school may have to have twelve teachers. Further, for curriculum reasons, a principal may excess a higher performer if he can "run the schedule and offer the type of courses with fewer people. "[SCS] principals are having to do more with less, year after year after year." Therefore, SCS advises principals that they may excess a Level 5 teacher who only teaches English if that means keeping a Level 4 teacher who teaches English and math.[19] When teachers are excessed from a school, after the allocated number of teachers is given to the principal, the principal exercises his judgment on who goes and who stays.[20]

Teachers who were in positions that were excessed received notice from the Human Resources Department, which advised that, if non-tenured teachers did not find a new position before June 15, their contract would be terminated. Because Plaintiff's full-time economics position was excessed, he received this notice on May 15, 2014.[21]

On June 10, 2014, despite Plaintiff's complaints that he could not be terminated while on medical leave, Plaintiff received a non-renewal notice from Defendant Superintendent Hopson, which informed Plaintiff that his contract was going to be terminated effective June 30, 2014. However, after Plaintiff's continued complaints to the Human Resources Department and the Labor Relations Department that his rights under the ADA were being violated by excessing his position while he was on medical leave, Plaintiff was informed that

---

[19] (Defs' Resp. to Pl's SOF, ¶ 23, ECF No. 52-1.) Defendants note that the documents speak for themselves.

[20] (Pl's Resp. Defs' SOF, ¶ 7, ECF No. 43-1.)

[21] (*Id.* at ¶¶ 9 - 10.)

his contract had not been terminated and that he would be allowed to find another position within the school system following his leave. Plaintiff was to be considered an active employee on leave until such time.[22]

Despite having been advised that he was not terminated, on August 20, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") based on disability and age discrimination. Issues listed by EEOC staff were "Discharge, Accommodation." Plaintiff complained about being discharged while still on protected approved unpaid medical leave. Plaintiff listed limitations of standing, climbing, and mobility because of his back and the need to use a cane and a wheelchair.[23] The charge stated: "On October 3, 2013, I was placed on FMLA due to my disability. On March 24, 2014, I requested extended leave as an accommodation to my disability which was granted until August 1, 2014. On April 15, 2014, I received an email from Michael Kyle, Principal stating my position was being replaced by Ryan Quinn. On or about June 10, 2014, I received a letter from Dorsey Hopson terminating my employment. I believe I have been discriminated against because of my age (71) and disability in violation of the Age Discrimination in Employment Act of 1967, as amended (ADEA) and in violation of in violation of [sic] the Americans with Disabilities Act Amendments Act (ADAAA) 2008." The form indicated that the latest date the discrimination took place was June 30, 2014, the date that employment contracts for non-tenured teachers without a position for the upcoming

---

[22] (*Id.* at ¶¶ 11 - 12.) At this point, Plaintiff's leave was set to expire on August 1, 2014, although his leave was later extended until October 2014. (*Id.* at ¶ 13.)

[23] (Defs' Resp. to Pl's SOF, ¶¶ 19-20, ECF No. 52-1.) Defendants note that the documents speak for themselves.

school year ended.[24]

Pursuant to Defendants' policy and the need for a school to fill positions at the beginning of a school year, an employee is "typically" not reassigned to another position before being released to come back to work.[25]

On September 30, 2014, Plaintiff submitted a "Reinstatement Form" which approved his return to work following his leave of absence. HR had informed Plaintiff that he would need to submit this form and then be referred to the Stars ("Strategic Teacher Recruitment and Staffing") Office regarding placement. Plaintiff submitted documentation from his health care provider that he could return to work.[26]

During the 2014-15 school year, economics courses at Wooddale High School were spread out among three existing teachers who also taught other subjects.[27] No teacher at Wooddale was certified to teach economics as late as September 2014.[28]

At this point, the Human Resources Department assisted Plaintiff in trying to find another position.[29] SCS has the power and authority to reassign a teacher to another position

---

[24] (Pl's Resp. Defs' SOF, ¶ ¶ 14-15, ECF No. 43-1.) Plaintiff states that his perception that he was no longer a "genuine employee" of SCS was based on his reasonable belief and good-faith understanding in light of the fact that he was receiving no pay and had not been reassigned. (*Id.* at ¶ 16.)

[25] (*Id.* at ¶ 17.)

[26] (*Id.* at ¶¶ 5, 18.)

[27] (*Id.* at ¶ 8.) Quinn did not pass the Praxis exam to teach economics until October 2014. He did not receive his endorsement in economics until February 2015, and he now teaches economics at Central High School. (*Id.* at ¶¶ 7-8.)

[28] (Defs' Resp. to Pl's SOF, ¶ 17, ECF No. 52-1.)

[29] (*Id.* at ¶ 19.) The parties dispute the level of assistance provided by Defendants to Plaintiff and whether Defendants made a good faith effort to assist Plaintiff. Plaintiff contends that he applied for both teaching and non-teaching positions but did not receive an offer of

at a different school operated by SCS.[30]

In December 2014, Plaintiff received an interview for a teaching position at Manassas High School. Plaintiff declined the position because he did not believe it would be a permanent position and because he did not believe that his requests for various accommodations for his disability would be honored. Plaintiff was also concerned that the Manassas principal had not met with him; instead, he was interviewed by a learning coach. Additionally, he did not know if he would have to dismiss the present lawsuit if he accepted the position.[31]

In its response to the EEOC, dated December 4, 2014, SCS claimed that Plaintiff remained its employee. SCS also claimed that, when Plaintiff was cleared to return to work on October 13, 2014, it sought to place him in a vacant position and "recently placed him" in an economics position at Manassas High. Further, it claimed that Plaintiff was "sent on interviews."[32]

 On February 18, 2015, Plaintiff requested a Right to Sue letter from the EEOC. The EEOC issued a Notice of the Right to Sue letter on June 3, 2015. Plaintiff filed this lawsuit on July 7, 2015.[33]

The final decision on Plaintiff's request for unemployment benefits was made by the Tennessee Department of Labor and Workforce Development, on September 4, 2015, which

---

employment until December 4, 2014. (*Id.*)

[30] (*Id.* at ¶ 18.)

[31]  (Pl's Resp. Defs' SOF, ¶¶ 20 - 21, ECF No. 43-1.)

[32] (*Id.* at ¶ 21.)

[33] (*Id.* at ¶¶ 22 - 24.)

concluded: "The evidence establishes that the claimant voluntarily quit his employment and good cause within the meaning of T.C.A. § 50-7-303(a)(1) has been reasonably established."[34]

Analysis

ADEA Claim

The ADEA makes it unlawful for an employer "to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[35]  A plaintiff may establish a violation of the ADEA by either direct or circumstantial evidence.[36]  "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."[37]  "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred."[38]

In the present case, Plaintiff has not demonstrated direct evidence of age discrimination.  Accordingly, Plaintiff's circumstantial evidence of discrimination is analyzed under the *McDonnell Douglass* burden-shifting framework.[39]

---

[34]  (Defs' Resp. to Pl's SOF, ¶ 22, ECF No. 52-1.)

[35]  29 U.S.C. § 623(a)(1).

[36]  *See Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008).

[37]  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted).

[38]  *Id.*

[39]  The Sixth Circuit Court of Appeals has continued to use the *McDonnell Douglas* framework to analyze ADEA claims based on circumstantial evidence even though the Supreme Court expressly declined to decide whether *McDonnell Douglas* applies to the

[T]he plaintiff bearing the initial burden to make out a prima facie case of discrimination. *See Schoonmaker v. Spartan Graphics Leasing*, 595 F.3d 261, 264 (6th Cir. 2010). Assuming the plaintiff carries that burden, it is then up to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Id.* If the employer advances a legitimate justification, "the burden of production shifts back to the plaintiff to show that the employer's explanation was a mere pretext for intentional age discrimination." *Id.* ADEA plaintiffs can establish pretext by demonstrating that the proffered non-discriminatory reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).[40]

Ordinarily in the ADEA context, a plaintiff establishes a prima facie case by showing that he: (1) is over the age of forty; (2) was subject to an adverse employment decision; (3) was qualified for the position; and (4) was replaced by a younger person.[41] However, the *McDonnell Douglas* framework changes in the context of a work-force reduction.[42]

A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.[43]

Thus, the fourth element, replacement by someone outside of the protected class, is

---

ADEA in *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 175 (2009). *See Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 261, 264 (6th Cir. 2010) (citing *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009)).

[40] *Trapp v. TSS Techs., Inc.*, 485 F. App'x 757, 759 (6th Cir. 2012).

[41] *Skala v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 420 (6th Cir. 1999).

[42] *See Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

[43] *Id.*

modified because the employer does not replace the employee.[44] Instead, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons."[45] This "extra" evidence must be "sufficiently probative" to permit the trier-of-fact to believe that the defendant employer intentionally discriminated against the plaintiff employee based on age.[46]

A plaintiff can meet the fourth element in a reduction in force case as follows:

> [A] plaintiff could establish a prima facie case by showing that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff. Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive.... The guiding principle is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age.[47]

A court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.[48] This "principle applies equally in a work force reduction setting."[49]

In the present case, it is undisputed that Plaintiff was over the age of forty and was qualified for his position as a full-time economics teacher. However, Defendants contend that he cannot show that he suffered an adverse action or that he was singled out because of his age. Defendants' argument is not persuasive as to whether Plaintiff suffered an adverse

---

[44] *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999).

[45] *Id.* (quoting *Barnes*, 896 F.2d at 1465).

[46] *Barnes*, 896 F.2d at 1466.

[47] *Id.* at 896 F.2d at 1465-66 (internal citations omitted).

[48] *See Schoonmaker*, 595 F.3d at 264–65 (citing *Wexler*, 317 F.3d at 574).

[49] *Schoonmaker*, 595 F.3d at 264–65 (citing *Skelton v. Sara Lee Corp.*, 249 F. App'x 450, 456 (6th Cir. 2007)).

action, but it is persuasive as to whether Plaintiff was singled out because of his age.

An "adverse employment action" is defined as a "materially adverse change in the terms and conditions of employment."[50] Such a change usually includes "a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."[51] It "must be more disruptive than a mere inconvenience or an alteration of job responsibilities."[52] "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."[53]

Even though Plaintiff was not terminated and was on leave when his position was excessed, he did not have a position to return to when his leave ended. A reasonable person would believe that not having a job upon being released to work was an adverse action, even if Defendants assisted Plaintiff with attempting to find another job. Even if Plaintiff had accepted the Manassas High School position, he would still have been without a salary and benefits from mid-October until he was actually placed in the new position subsequent to his December 4 interview. The Court finds that the excessing of Plaintiff's position constituted an adverse action within the meaning of the ADEA.

However, as to the fourth factor, Plaintiff has not pointed to any evidence, which, if believed, indicates that he was singled out for excessing because of his age. Plaintiff

---

[50] *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999).

[51] *Id.*

[52] *Id.* (citation omitted).

[53] *Sands v. Jackson State Cmty. Coll.*, 2006 WL 1174469 at *5 (W.D. Tenn. April 29, 2006) (quoting *Davis v. Town of Lake Park Florida,* 245 F.3d 1232, 1239 (11th Cir. 2001)).

contends that the fact that Principal Kyle tried to get Ryan Quin, a younger teacher and not as qualified as Plaintiff, to take the test to qualify for teaching economics so that he could fill Plaintiff's position if Plaintiff did not return to work is evidence that he was singled out because of his age. There is nothing in the record to support Plaintiff's contention that Kyle had "written off 71 year old Terre as over-the-hill and unlikely to return to teaching" because of Plaintiff's age.[54] As discussed below, the evidence indicates that Kyle's concern appears to have been with the state of Plaintiff's health rather than with his age. There is nothing to link Kyle's communications with Quinn to Plaintiff's age.

Moreover, Plaintiff has not shown that he possessed qualifications superior to those of a younger co-worker (Quinn) working in the same position as Plaintiff. The undisputed evidence shows that Plaintiff was the only economics teacher at Wooddale. Quinn maintained a different position. Even though Principal Kyle discussed moving Quinn to the economics position if he passed the Praxis exam, this never occurred. Consequently, Plaintiff has not established a prima facie case of age discrimination.[55]

However, even if he had, Defendants have pointed to a legitimate, non-discriminatory reason for the excessing, and Plaintiff has not shown pretext. Defendants state that, due to budgetary constraints, Wooddale High School had to lose seven teaching positions for the 2014-15 school year. Since the economics classes taught by Plaintiff could be absorbed by existing teachers, the full-time economics position was identified for excess.[56] Plaintiff has

---

[54]  (Pl's Resp. p. 13, ECF No. 43.)

[55]  *See Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767–68 (6th Cir. 2004) (quoting *Barnes*, 896 F.2d at 1466) ("The guiding principle [in a work force reduction case] is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age.'").

[56]  (Reddick Depo. p. 24, ECF No. 38-10); (Defs' Supp. Ans. Pl's Interr., pp. 2-3, ECF No.

pointed to no evidence in the record to refute Defendants' evidence of budgetary constraints or that his position was absorbed by existing teachers.

Plaintiff argues that he has shown pretext because Principal Kyle indicated that he wanted Quinn to fill the economics position. However, the evidence shows that Kyle's actions in urging Quinn to take the Praxis test for economics were based on his belief that Plaintiff would not be able to return to the economics position because of his health.[57] Even if Kyle had preferred Quinn for the economics position, his "preference for [Quinn] is not actionable unless it was motivated by discriminatory animus."[58] There is no such evidence in the record. Furthermore, Quinn was never placed in Plaintiff's economics position.

Because Plaintiff has failed to come forward with any evidence that would allow a reasonable jury to ultimately conclude that Plaintiff would not have been excessed "but for" his age, Defendants are entitled to summary judgment on the ADEA claim.

ADA Claim

Plaintiff has brought both a failure to accommodate claim and a disparate treatment claim based on his disability. The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[59]

---

11.)

[57] (Quinn Depo. pp. 34- 36, ECF No. 44-2 (Kyle told Quinn, "I'm not sure about Dr. Terre's health and so he's like we need somebody to do economics. So he asked me.")).

[58] *Geiger*, 579 F.3d at 625.

[59] 42 U.S.C. § 12112(a).

Defendants contend that they are entitled to summary judgment on Plaintiff's claim for the failure to accommodate his disability under the ADA because Plaintiff failed to exhaust his administrative remedies on this claim. According to Defendants, Plaintiff's charge does not give notice of any claim other than age and disability discrimination which took place, at the latest, on June 30, 2014, the date of Plaintiff's alleged termination.

The exhaustion of administrative remedies is a condition precedent to an ADA action.[60] To exhaust administrative remedies, a plaintiff must file an EEOC charge within 180 days of the alleged unlawful employment practice or, if the plaintiff has instituted proceedings with a state or local agency, within 300 days.[61] The exhaustion requirement operates "to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." [62] A Court's jurisdiction to hear cases arising under the ADA is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."[63] "Therefore, a plaintiff may bring suit on an uncharged claim if it was reasonably within the scope of the charge filed," or if the agency discovers evidence of the discrimination relating to the uncharged claim while investigating plaintiff's charge.[64]

The requirement that a charge be "sufficiently precise to identify the parties, and to

---

[60] *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000), *cert. denied*, 533 U.S. 951 (2001).

[61] *See* 42 U.S.C. § 2000e-5(e).

[62] *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

[63] *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 109 (6th Cir. 2009) (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)).

[64] *Id.* (citing *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)).

describe generally the action or practices complained of"[65] serves two purposes:

> First, the requirement provides the basis for the EEOC's "attempt to obtain voluntary compliance with the law." Second, these attempts "notify potential defendants of the nature of the plaintiff's claims and provide them the opportunity to settle the claims before the EEOC rather than litigate them."[66]

To satisfy this requirement, the "complainant need not 'attach the correct legal conclusion' to allegations in the charge, 'conform to legal technicalities,' or use 'the exact wording which might be required in a judicial pleading.'"[67] But, a plaintiff is not "excused from filing charges on a particular discrimination claim before suing in federal court."[68] "The claim must grow out of the investigation or the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim."[69]

Plaintiff's EEOC charge states as follows:

> On or about October 1, 2009, I began working for the above named employer.
> On October 3, 2013, I was placed on FMLA due to my disability. On March 24, 2014, I requested extended leave as an accommodation to my disability which was granted until August 1, 2014. On April 15, 2014, I received an email from Michael Kyle, Principal stating my position was being replaced by Ryan Quinn. On or about June 10, 2014, I received a letter from Dorsey Hopson terminating my employment.
> I believe I have been discriminated against because of my age (71) and disability in violation of the Age Discrimination in Employment Act of 1967, as amended (ADEA) and in violation of in violation of the Americans with Disabilities Act Amendments Act (ADAAA) 2008.[70]

---

[65] *Williams v. CSX Transp. Co.*, 643 F.3d 502, 509 (6th Cir. 2011).

[66] *Jones v. Sumser Retirement Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) (quoting *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 236, 254 (6th Cir. 1998)).

[67] *Jones*, 209 F.3d at 853 (quoting *Davis*, 157 F.3d at 463).

[68] *Jones*, 209 F.3d at 853.

[69] *Id.*

[70] (EEOC Charge, Amd. Cmplt., ECF No. 13-1.)

Concerning pre-June 30, 2014, events, Plaintiff contends that his EEOC charge put Defendants on notice of his failure to accommodate claim in that he referenced (1) his FMLA leave from October 3, 2013, to June 30, 2014, which he now claims he was forced to take; (2) the April 2014 email from Principal Kyle that he was being "displaced" by Quinn; and (3) his termination letter in June 2014.[71] Only Plaintiff's contention that he was forced to take FMLA leave from October 3, 2013, to June 30, 2014, falls into the failure to accommodate category. The contentions that he was wrongly terminated because of his disability and replaced by Quinn fall into the disparate treatment category, and there is no question but that this claim has been exhausted.

Plaintiff's amended complaint does not make any claim that he was forced to take FMLA leave. Instead, the amended complaint alleges that "[o]n or about October 2013, Plaintiff sought medical leave from Defendant because of *Spinal Stenosis* and other related spinal impairments" and that Plaintiff's leave was protected under the FMLA.[72] The amended complaint also states that Principal Kyle "was open to Plaintiff trying to teach class from the confines of a wheelchair. However, Plaintiff was physically unable to return to work at this time because his spinal stenosis was too painful."[73] The amended complaint even describes the leave that Defendants granted him prior to his excessing as "a reasonable accommodation."[74]

As the basis for his statement that Kyle was "open" to his teaching from a wheelchair,

---

[71] (Pl's Resp. p. 20, ECF No. 43.)

[72] (Amd. Cmplt. ¶¶ 13, 16, ECF No. 13) (emphasis in original).

[73] (*Id.* at ¶ 18.)

[74] (*Id.* at ¶ 51.)

Plaintiff relies on the same October 2013 email that he now attempts to rely on as support for his position that Kyle was **not** open to his teaching from a wheelchair.[75] Plaintiff does not contend that he only found out about Principal Kyle's alleged reluctance to allow him to teach in a wheelchair during discovery but, instead, re-interprets the evidence that he used initially to support the allegations of his complaint to attempt to defeat summary judgment. The Court will not allow this disingenuous tactic. Accordingly, the Court finds that Plaintiff did not exhaust his pre-June 30, 2014, failure to accommodate claim.

Next, the Court must determine if Plaintiff's post-June 30, 2014, failure to accommodate lawsuit allegations could reasonably be "expected to grow out of the charge of discrimination." The Court finds that they cannot.

Plaintiff contends that Defendants had a "continuing duty to accommodate [his] disability" and, thus, the EEOC's investigation into the claim in his charge that he was wrongly terminated (excessed) would have led to an investigation into his lawsuit allegations that Defendants did not reasonably accommodate his disability after he returned from his leave.[76] Plaintiff appears to be alluding to the claims in his complaint that, after being offered a position at Manassas High School, his "request to restructure the class for his use of a wheelchair" was not addressed.[77] Plaintiff also alleges that he was forced to resign on March 20, 2015, because "he still had not been assigned to an appropriate teaching position after several job interviews at schools in Memphis, and because no school had agreed to

---

[75] (*Id.* at ¶¶ 18, 51); (Pl's Resp. Defs' SOF, ¶ 3, ECF No. 43-1.)

[76] (Pl's Resp. p. 18, ECF No. 43.)

[77] (Amd. Cmplt. ¶ 45, ECF No. 13.)

accommodate his disability."[78]

Plaintiff's EEOC charge does not contain either a request for an accommodation or the denial of an accommodation from Defendants. An investigation into the reasons for Plaintiff's alleged termination or excessing would not have led to an investigation into Defendants' alleged failure to place Plaintiff into a desired position after he returned from medical leave.

Moreover, Plaintiff did not exhaust any claim that non-protected individuals were placed in open positions that Plaintiff believes he should have received. The scope of that charge would have required an inquiry into each specific incident of failure to hire. The EEOC did not have an opportunity to investigate any such claim, and any failure to hire claim must be dismissed.

As explained in *Stone v. Premier Orthopaedics & Sports Med., PLC*,[79]

> Disability discrimination claims and claims alleging failure to accommodate are analytically distinct. "'[T]hey are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability.'" *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 813 (7th Cir. 2014) (quoting *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999)). In other words, "an administrative charge alleging disability discrimination alone does not automatically exhaust administrative remedies for a failure-to-accommodate claim." *Lara v. Unified School Dist. # 501*, 350 Fed. App'x 280, 285 (10th Cir. 2009); *see Jones v. Sumser Retirement Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) (stating that court does not have subject matter jurisdiction over an ADA claim "unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge," and reasonable accommodation claim did not arise from plaintiff's wrongful termination claim); *Dunavant v. Frito Lay*, 2013 WL 816673 at *9 (M.D. Tenn. Mar. 5, 2013) ("while a charge may be said to include discrimination which may reasonably be expected to grow out of the scope of the initial charge, a disparate treatment claim based upon an alleged disability

---

[78] (*Id.* at ¶ 48.)

[79] 2015 WL 4487778 at *11 (M.D. Tenn. July 23, 2015).

does not encompass a failure to accommodate claim.").

Plaintiff did not exhaust his administrative remedies on his failure to accommodate claims; therefore, Defendants are entitled to summary judgment on those claims.

Next, Defendants assert that they are entitled to summary judgment on Plaintiff's disparate treatment claim under the ADA. Clearly, Plaintiff has exhausted his administrative remedies on this claim. However, Defendants contend that Plaintiff has not established a prima facie case of discrimination, and, even if he has, Plaintiff cannot show that Defendants' proffered legitimate non-discriminatory reason for Plaintiff's excessing was a pretext for disability discrimination.

Plaintiff has presented no direct evidence that he was discriminated against because of his disability. Therefore, the Court must determine if he has presented circumstantial evidence under *McDonnell Douglas*. To demonstrate a prima facie case of disability discrimination, a plaintiff must show that he (1) is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.[80] If the plaintiff presents a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action.[81] Once the defendant employer has done so, the burden shifts back to the plaintiff to show that the

---

[80] *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (clarifying that the proper test for a prima facie case of discrimination under the ADA is stated in *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996)).

[81] *Monette*, 90 F.3d at 1185–86.

proffered reason is pretextual.[82]  Ultimately, the plaintiff must demonstrate that "but for" his disability, he would not have been terminated from his position. [83]

In a case involving a reduction in force, there is a heightened prima facie burden that the plaintiff must meet.[84]  "[B]ecause the most common legitimate reason for the discharge of a plaintiff in a [reduction in force] situation is the work force reduction, the plaintiff must provide additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons."[85]  This additional showing can be met by demonstrating that a "comparable non-protected person was treated better" [86] or that "additional direct, circumstantial, or statistical evidence [tends] to indicate that the employer singled out the plaintiff for discharge for impermissible reasons."[87]

Here, there is no dispute that Plaintiff was disabled within the meaning of the ADA and that Defendants knew he was disabled.  Defendants again argue that the excessing of Plaintiff's position was not an adverse action since Plaintiff remained on the "active" list. However, as discussed above, the fact that Plaintiff did not have a position to return to when

---

[82] *Id.* at 1186–87.

[83] *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012).

[84] *Geiger*, 579 F.3d at 623.  *See also Arthur v. Am. Showa, Inc.*, 625 F. App'x 704, 707 (6th Cir. 2015) ("The prima facie framework is modified if an employee is discharged due to a reduction in force. In such a case, the plaintiff is not required to demonstrate the fifth prong of the prima facie framework because he is not replaced. Instead, the plaintiff must introduce additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.") (citations omitted).

[85] *Geiger*, 579 F.3d at 624 (internal quotation marks and citations omitted).

[86] *Williams v. Emco Maier Corp.*, 212 F. Supp.2d 780, 784 (S.D. Ohio 2002) (citation omitted).

[87] *Barnes*, 896 F.2d at 1465.

his leave ended was a materially adverse change in the terms and conditions of his employment and, thus, constituted an adverse employment action under the ADA.[88]

Next, Defendants contend that Plaintiff was singled out for excessing because of his disability. As evidence of a causal connection, Plaintiff points to the October 2013 email from Principal Kyle that stated, in part, "I don't think teaching from a wheelchair is an option if you think back to the difficulty that Minton had but that is your call too. If you can do it and do it regularly, effectively, and successfully then I am all for it."[89] Plaintiff also points out that Ryan Quinn testified that Principal Kyle asked him to take the Praxis test so that he could teach economics because he was not sure about the state of Plaintiff's health and that Plaintiff might not be coming back to Wooddale.[90] Though this evidence is slight, the trier of fact could find that Kyle considered Plaintiff's disability in deciding which position to excess.

However, even if the Court accepts Plaintiff's view of this evidence as indicating a connection between his excessing and his disability and even considering that Quinn's position was not excessed, Plaintiff cannot establish a prima facie case because he has failed to show that he was qualified for the position despite his disability within the meaning of the ADA. Although there is no dispute that Plaintiff had the educational requirements to teach economics, he was not qualified because he could not meet the attendance requirements of the job.

At the time of Plaintiff's excessing, he was still on medical leave and had not been released to return to work, and, at the time of Plaintiff's filing of his EEOC charge on August

---

[88] *Hollins*, 188 F.3d at 662.

[89] (Pl's Resp. Defs' SOF, ¶ 3, ECF No. 43-1.)

[90] (*Id.* at ¶ 7.)

20, 2014, Plaintiff was still not scheduled to return to work. Plaintiff did not submit a "Reinstatement Form" which approved his return to work following his leave of absence until September 30, 2014. Plaintiff was on approved leave until October 3, 2014.[91]

Although Plaintiff contends that Defendants' representative's testimony that, when an employee is on a leave of absence, "typically, they're not assigned [to another position] until they're released to come back to work,"[92] is speculative, Plaintiff has pointed to no evidence showing that this is not Defendants' practice. As noted above, at the summary judgment stage, when challenged, the nonmoving party may not rest on his pleadings but must present some "specific facts showing that there is a genuine issue for trial."[93]

Under the ADA, a plaintiff must show that "he is qualified, that is, with or without reasonable accommodation which he must describe, he is able to perform the essential functions of the job."[94] "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."[95]

Plaintiff was not qualified to return to his full-time teaching job at the beginning of the 2014-15 school year because he was still on medical leave. Consequently, he has not established a prima facie case.

Even if Plaintiff could establish a prima facie case of discrimination, Defendants have proffered a legitimate, non-discriminatory reason for the alleged adverse employment action:

---

[91] (*Id.* at ¶¶ 4-5.)

[92] (Branch Depo. p. 54, ECF No. 38-12.)

[93] *Celotex Corp.,* 477 U.S. at 322.

[94] *Wheeler v. Jackson Nat'l Life Ins. Co.*, 2016 WL 427796 at *12 (M.D. Tenn. Jan. 4, 2016) (citing *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998)).

[95] *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84 (6th Cir. 2012) (quoting *Gantt*, 143 F.3d at 1047).

the reduction in workforce at Wooddale High for the 2014-15 school year. Since the economics classes taught by Plaintiff could be absorbed by existing teachers, the full-time economics position was identified for excess. Thus, the reduction in workforce at Wooddale High School was the reason for the adverse employment action.

Plaintiff has not put forth any evidence of pretext. It is undisputed that Wooddale had to lose seven positions for the 2014-15 school year because of budget cuts and that no teacher replaced Plaintiff in the full-time economics teaching position.[96] Furthermore, even though Plaintiff disputes the level of assistance he received from Defendants in placing him in another teaching position and was not satisfied with the job offer that he ultimately received, he has not disputed Defendants' evidence that Plaintiff was, in fact, provided assistance by the STARS office or that he was offered another teaching position that he turned down.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim under the ADA.

Conclusion

Defendants' motion for summary judgment (ECF No. 38) is **GRANTED** in its entirety. Plaintiff's motion for sanctions in the form of an adverse inference (ECF No 41) is **DENIED** as moot.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: October 17, 2016.

---

[96] (Reddick Depo. p. 22, ECF No. 38-10)